# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**BETTER THAN LOGS, INC.,**

     Debtor.

Case No. **20-20160-BPH**

---

**CONCRETE LOG SYSTEMS, INC., d/b/a "EVERLOG SYSTEMS"**

     Plaintiff.

-vs-

**BETTER THAN LOGS, INC,**

     Defendant.

Adv. No. **20-02013-BPH**

## MEMORANDUM OF DECISION

In this adversary proceeding, Plaintiff Concrete Log Systems, Inc. d/b/a "Everlog Systems" ("Everlog") and Defendant Better Than Logs, Inc. ("BTL") filed competing motions for summary judgment.[1] The Court conducted a hearing on the motions on March 11, 2021. Counsel for Everlog and BTL argued their respective positions. The exhibits filed by both parties prior to the hearing were admitted without objection.[2]

---

[1] ECF Nos. 17 and 18. References to "ECF Nos." refer to the docket in this adversary case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure

[2] ECF Nos. 32 and 33.

1

# BACKGROUND

## I.    District Court Litigation

Everlog holds five U.S. patents and two Canadian patents associated with simulated log siding products it produces and sells to consumers.[3] One of these patents, Patent 9,695,598 (the "598 Patent"), discloses and claims a simulated log product formed from cementitious material with a generally concave backside that may be left hollow or filled with foam or some other insulating material.[4] Everlog has held the 598 Patent since July 4, 2017.[5]

BTL also manufactures simulated cementitious log siding products.[6] On February 15, 2018, Everlog sued BTL in the United States District Court for the District of Montana ("District Court"). Everlog's District Court Complaint generally alleged two types of claims: (i) patent infringement, and (ii) false advertising under state and federal law.[7]

During the course of discovery, BTL produced drawings showing various iterations of the products it manufactured and sold.[8] These drawings comprised "Exhibit 51."[9] Exhibit 51 was admitted and considered by the District Court.[10] Some of the drawings comprising Exhibit 51 were dated "03/2016" and some were dated "08/2018."[11] Each product illustration with an 08/2018 date includes a "rigid foam" core and "concrete" backing that do not appear in the

---

[3] ECF No. 1.
[4] *Id.*
[5] *Id.*
[6] ECF No. 6.
[7] ECF Nos. 1 and 6.
[8] ECF No. 32-13 at 88-104.
[9] *Id.*
[10] *Id.*
[11] *Id.*

2

drawings dated 03/2016.[12] BTL began manufacturing the products with the foam core and concrete backing in April of 2019 and continues to manufacture them today.[13]

Shortly after the close of discovery in the District Court litigation, BTL's counsel moved to withdraw. The District Court granted the motion and directed BTL to obtain new counsel within 14 days. It did not do so. As a result, Everlog requested entry of BTL's default. BTL did not file any response or objection. The District Court entered an order directing the Clerk of Court to enter BTL's default.[14] Next, Everlog filed a motion requesting that default judgment be entered against BTL. BTL again failed to respond or otherwise object.[15] The Court conducted a hearing on Everlogs's motion for default judgment three weeks later. BTL failed to appear at the hearing.[16]

Following the hearing, the District Court entered an Order granting Everlog's motion for entry of default judgment against BTL ("District Court Order"). The District Court Order was accompanied by a judgment awarding Everlog $978,909.00 in damages ("Judgment") and an injunction that prohibited BTL from "making, using, advertising, or selling products that infringe…the '598 patent'" ("Injunction").[17]

The District Court Order granted default judgment in favor of Everlog on each of its four claims: (1) patent infringement under 35 U.S.C. § 271; (2) false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A); (3) false advertising under 15 U.S.C. §

---

[12] For purposes of this decision, only those drawings with the rigid foam core and concrete backing are relevant. The term "Exhibit 51" is used throughout this Decision to refer to those drawings specifically.
[13] ECF No. 17-1 at 5.
[14] ECF No. 17.
[15] ECF No. 20.
[16] *Id.*
[17] ECF No. 32-9.

1125(a)(1)(B); and (4) unfair competition under Montana law.[18] With respect to Everlog's patent infringement claims, the District Court awarded Everlog lost profits totaling $799,793. In doing so, the District Court determined that "there is no way for [BTL] to produce simulated log siding that does not infringe" upon the 598 Patent.[19]

Of the total $978,909 Judgment, the District Court Order allocated $179,116 of those damages to Everlog's false designation of origin and false advertising claims. In awarding damages, the District Court determined that BTL falsely described its products as manufactured in Montana when, in fact, the concrete "blanks" used in BTL's products were poured in China. Accordingly, the District Court determined that Everlog was entitled to disgorged profits totaling $179,116.[20]

## II.    BTL's bankruptcy and this adversary proceeding.

BTL filed a voluntary Subchapter V petition on June 16, 2020.[21] BTL's schedules listed the $978,909 Judgment in favor of Everlog as disputed. On September 21, 2020, Everlog filed Proof of Claim No. 20-1 ("Claim") asserting a claim in the amount of $1,238,105.81. The Claim is comprised of the entire $978,909 Judgment, post-judgment interest, and its projected damages resulting from BTL's alleged continuing infringement of the 598 Patent.[22]

Everlog initiated this adversary proceeding on October 8, 2020.[23] Count One of Everlog's Complaint asserts that the $179,116 in false advertising damages awarded by the District Court constitutes a nondischargeable debt under § 523(a)(6). Count Two of the Complaint alleges that,

---

[18] ECF No. 32-8.
[19] *Id.*
[20] *Id.*
[21] ECF No. 1 in Case No. 20-20160-BPH
[22] Attachment to Proof of Claim 20-1 filed in Case No. 20-20160-BPH.
[23] ECF No. 1 in Adversary Case No. 20-02013-BPH.

notwithstanding the Injunction entered by the District Court, BTL continues to manufacture and sell products that infringe upon the 598 Patent. Everlog contends that these damages are similarly nondischargeable pursuant to § 523(a)(6).

### A. Everlog's Motion for Summary Judgment.

Everlog filed an Amended Motion for Summary Judgment and Brief in Support on February 3, 2021 (collectively, "Everlog's Motion").[24] Everlog's Motion contends that summary judgment is appropriate on count one of its Complaint ("Count One") because the District Court Order and corresponding Judgment conclusively establish that BTL acted willfully and maliciously when it falsely advertised its products as made in Montana when they were not.[25] Further, Everlog contends that it is entitled to summary judgment on count two of its Complaint ("Count Two") because the undisputed facts establish BTL continues to infringe upon Everlog's 598 Patent, in direct violation of the District Court's Injunction.[26]

With respect to Count One, Everlog relies on the finding in the District Court Order that BTL acted "willfully" in falsely describing its products as manufactured in Montana and awarding Everlog $117,116 in disgorged profits accordingly.[27] Everlog asserts that although the "malice" prong of § 523(a)(6) was not specifically addressed by the District Court, the findings and conclusions reflected in the District Court Order nevertheless establish that BTL acted with the requisite level of malice when it falsely advertised its products' country of origin. Everlog contends that this Court should give preclusive effect to the District Court Order and determine its award of $179,116 in damages is nondischargeable under §523(a)(6).[28]

---

[24] ECF Nos. 19 and 20, respectively.
[25] ECF No. 20 at 2.
[26] *Id.*
[27] ECF No. 20 at 13; ECF No. 32-8 at 12.
[28] ECF No. 20 at 16.

With respect to Count Two of the Complaint, Everlog contends that BTL continues to manufacture and sell products that infringe upon the 598 Patent. Accordingly, Everlog argues that BTL's continued violation of the Injunction entered by the District Court constitutes willful and malicious conduct under § 523(a)(6).

**B.  BTL's Motion for Partial Summary Judgment.**

BTL filed a competing Motion for Partial Summary Judgment and supporting Brief (collectively, "BTL's Motion") contending it is also entitled to summary judgment on Count Two. Generally, BTL contends that summary judgment in its favor is appropriate on Count Two because the products it currently manufactures and sells, as illustrated on Exhibit 51, do not infringe upon the 598 Patent or violate the District Court's Injunction.[29]

More specifically, BTL contends that the Judgment and Injunction entered by the District Court are tied to, and cannot be construed more expansively than, Everlog's Complaint filed in the District Court.[30] BTL argues that Everlog's District Court Complaint described BTL's infringing products as "elongated, concrete logs that have a generally C-shaped cross-section with an exterior portion that is generally convex" with "an inner portion that is generally concave" and which may be "filled with an insulation or a structural support, or both."[31] Beginning in April of 2019, BTL began manufacturing products that include a cementitious front and back side.[32] These modified products are illustrated on Exhibit 51. Despite the fact that Everlog introduced Exhibit 51 at the default judgment hearing, BTL contends that the issue of whether its modified design violates the 598 Patent falls outside the scope of Everlog's District

---

[29] ECF No. 17-1 at 8.
[30] *Id.* at 8.
[31] *Id.* at 2.
[32] *Id.* at 6.

6

Court Complaint and, by extension, beyond the scope of the Injunction under Civil Rule 54.[33] Accordingly, BTL contends that the products reflected on Exhibit 51 do not infringe upon the 598 Patent or violate the Injunction.[34]

## ANALYSIS

### I.    Summary Judgment Standard.

Rule 7056 makes Civil Rule 56(a) applicable in adversary proceedings. Pursuant to Civil Rule 56, summary judgment is appropriate "if the moving party shows that there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014). The presiding court "may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial." *Id.* A dispute is genuine if "there is evidence for a reasonable fact finder to hold in favor of the non-moving party, and the fact is 'material' if it might affect the outcome of the case." *Id.* (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). The moving party bears the burden to establish the absence of any genuine issue of material fact. *Wank*, 505 B.R. at 886. When faced with cross-motions for summary judgment, "each motion must be considered on its own merits" to determine whether either of the parties is entitled to judgment under Civil Rule 56. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### II.    Section 523(a)(6).

A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the debt to be excepted from discharge falls within one of

---

[33] *Id.*
[34] *Id.* at 10.

the exceptions to discharge enumerated in § 523(a). *Grogan v. Garner*, 498 U.S. 279, 287 (1991). One of these enumerated exceptions, § 523(a)(6), excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The word "willful" as used in § 523(a)(6) modifies the word "injury." The Supreme Court has made clear § 523(a)(6) is applicable only where the debtor intends the consequences of their act, not simply the act itself. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A creditor seeking to establish nondischargeability under § 523(a)(6) must establish both willfulness and maliciousness. *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010).

### III. Everlog is entitled to summary judgment on Count One of the Complaint.

As stated, Everlog contends that this Court should give preclusive effect to the findings and conclusions in the District Court Order and grant summary judgment on Count One of the Complaint in its favor. BTL did not file a competing Motion with respect to Count One, but contends that summary judgment should not be granted because the District Court did not consider whether BTL's false advertising was both "willful" and "malicious," as required under § 523(a)(6).[35] Accordingly, BTL contends that the District Court Order is not entitled to preclusive effect in this proceeding.[36] As the sole moving party with respect to Count One, Everlog bears the burden of establishing the absence of any genuine issue of material fact and that it is right to judgment as a matter of law. *See Wank*, 505 B.R. at 886.

The doctrine of issue preclusion, formerly referred to as "collateral estoppel," "foreclose[s] relitigation of matters that have been actually litigated." *In re Raynoso*, 315 B.R.

---

[35] ECF No. 25 at 3.
[36] *Id.* at 5.

544, 551 (9th Cir. BAP 2004). Issue preclusion applies in dischargeability proceedings. *Grogan*, 498 U.S. at 284–85.  Bankruptcy courts must give federal court judgments the same preclusive effect other federal courts would. *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019). For issue preclusion to apply to a federal court judgment: (1) the issue must be identical to one alleged in prior litigation; (2) the issue must have been "actually litigated" in the prior litigation; and (3) the determination of the issue in the prior litigation must have been "critical and necessary" to the judgment. *Beauchamp v. Anaheim Union High School Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016).

### A.  Identity of the issues.

As stated, the first prong of the issue preclusion analysis requires identity of the issues litigated in both the prior and present proceedings. Essentially, this requires the Court to discern whether the District Court's finding that BTL's "false designation of origin and false advertising was willful"[37] satisfies the "willful and malicious" standard under § 523(a)(6). *See In re Baldwin,* 245 B.R. 131, 136 (9th Cir. BAP 2000) (analyzing whether a state court's finding that the debtor committed an intentional tort by either striking or assisting other defendants in striking judgment creditor satisfied the willful and malicious requirement under § 523(a)(6) for purposes of determining identity of the issues). BTL contends that the District Court Order is not entitled to preclusive effect because the District Court did not analyze whether BTL acted with malice, as required under § 523(a)(6).[38] In undertaking its analysis, this Court is guided by both the findings and conclusions contained in the District Court Order and the material allegations contained in Everlog's District Court Complaint.[39] *See Baldwin*, 245 B.R. at 136 ("a default

---

[37] ECF No. 32-8 at 12.
[38] ECF No. 25 at 3-4.
[39] ECF No. 32-14.

judgment conclusively establishes…the truth of all material allegations contained in the complaint in the first action…").

### 1. "Willfulness" under § 523(a)(6).

In the Ninth Circuit, the "willful injury" requirement of § 523(a)(6) is satisfied only if "the debtor has a subjective motive to inflict injury or when the debtor believes the injury is substantially certain to result from his own conduct" *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1209 (9th Cir. 2010). The willfulness standard requires a Plaintiff to establish that a debtor not only committed a wrongful act but did so "with knowledge that the act is wrongful and will necessarily cause injury." *In re Jerich*, 238 F.3d 1202, 1208 (9th Cir. 2001).

Everlog's false designation of origin and false advertising claims in the District Court litigation arose under 15 U.S.C. § 1125(a)(1).[40] A required element of a false advertising claim under 15 U.S.C. § 1125(a)(1) is that "the plaintiff has been or is likely to be injured as a result of the false [advertising]." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (listing the elements of false advertising claims under 15 U.S.C. § 1125(a)(1)). An award of disgorged profits based upon false advertising or false designation of origin is appropriate only upon a showing that the defendant's violation was willful. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A.*, 778 F.3d 1059, 1073 (9th Cir. 2015).

"Willfulness" under 15 U.S.C. § 1125(a)(1) "requires a connection between a defendant's awareness of its competitors and its actions at those competitors' expense." *Id.* (quoting *Lindy Pen Co. v. Bic Pen Corp.* 982 F.2d 1400, 1406 (9th Cir. 1993)). "Only deliberate conduct will satisfy this standard; mere negligence will not." *Govino, LLC v. Goverre, Inc.*, 2018 WL 7348849 *5 (C.D. Cal. 2018). In other contexts, "courts generally apply forceful labels such as

---

[40] *Id.* at 7, 15.

'deliberate,' 'false,' 'misleading,' or 'fraudulent,'" to conduct that equates to "willfulness" under 15 U.S.C. § 1125(a)(1). *Lindy Pen*, 982 F.2d at 1406. Stated simply, "willfulness" under 15 U.S.C. § 1125(a)(1) requires a defendant to be aware of its competitors and take deliberate actions to the detriment of those competitors despite its awareness.

The District Court awarded Everlog disgorged profits in the amount of $179,116 based on its finding that BTL acted "willfully" in falsely advertising its products as manufactured in Montana. In doing so, the District Court found that BTL acted deliberately when it falsely advertised its products. Further, the District Court determined that BTL was aware of Everlog and nevertheless elected to undertake an action that caused Everlog to suffer injury. As required by 15 U.S.C. § 1125(a)(1), the District Court found that BTL was aware of Everlog and acted in a manner that was detrimental to it, causing Everlog injury.

The District Court Order conclusively establishes a nexus between BTL's deliberate act and Everlog's injury. At a minimum, BTL was substantially certain its conduct would result in injury to Everlog. By falsely advertising its products, prospective customers that may have purchased Everlog's products acquired BTL's products instead. BTL's conduct as outlined in the District Court Order establish BTL's willfulness for purposes of § 523(a)(6). *See Ormsby*, 591 F.3d at 1209. Accordingly, an identity of the issues exists between the District Court litigation and this adversary proceeding with respect to "willfulness."

### 2. "Maliciousness" under § 523(a)(6).

To establish "maliciousness" under § 523(a)(6), a plaintiff must satisfy four elements: 1) a wrongful act; 2) done intentionally; 3) which necessarily causes injury; and, 4) is done without just cause or excuse. *In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008). The willful injury must be established before malice can be inferred. *Ormsby*, 591 F.3d at 1207. In *Ormsby*, the Ninth

11

Circuit determined that a debtor's decision to act in violation of a law despite knowing the legal way to conduct business satisfied the malice prong of § 523(a)(6). *Id.*

Here, the undisputed facts lead to the same conclusion. First, the District Court concluded that BTL committed a wrongful act by falsely advertising its products as manufactured in Montana when they were partially manufactured in China. Similar to *Ormsby*, the District Court in this case concluded that BTL looked into the "Made in USA" standards and chose to market its products as manufactured in Montana, despite the fact that they were partially manufactured in China.[41] Indeed, BTL's disregard of the "Made in USA" standards formed the basis of the District Court's finding that it acted "willfully." The District Court's conclusions satisfy the first element of the malice analysis under § 523(a)(6).

In determining that BTL's false advertising was "willful," the District Court concluded that BTL acted intentionally at the expense of its competitors, including Everlog. *See Fifty-Six Hope Road Music, Ltd.*, 778 F.3d at 1073. Thus, the second and third elements of "malice" analysis under § 523(a)(6) are satisfied. Finally, the District Court considered BTL's "excuse" for its actions and determined that it nevertheless acted wrongfully. BTL's Response to Everlog's Motion contends that BTL researched and worked with the State of Montana to verify its products qualified for the "Made in Montana" designation. Arguably, this assertion could be construed as an attempt by BTL to offer a "just cause or excuse" for its actions. In support of this contention, it relies on the deposition testimony of Jon Perry in the District Court litigation. However, the District Court Order indicates that the District Court considered Perry's deposition testimony.  If his explanation had persuaded the District Court, the outcome before it may have been different. The District Court previously considered BTL's "just cause or excuse" and the

---

[41] ECF No. 32-8 at 11–12.

deposition testimony and this Court will not reconsider it here. Doing so would be tantamount to relitigating an issue already considered by the District Court.

Based on the District Court's findings, an identity of the issues exists between those resolved by the District Court in granting judgment in favor of Everlog on its false advertising claims and this Court's analysis under § 523(a)(6). Accordingly, the first prong of the issue preclusion analysis is satisfied.

### B. "Actually litigated."

"[A] default judgment is generally not entitled to [issue preclusion] because there is no actual litigation of the issues." *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000). However, the Ninth Circuit has made clear that the "actual litigation" requirement is satisfied where a debtor actively participates in the prior litigation but eventually abandons their efforts, resulting in entry of a default judgment against them. *See In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995) (applying issue preclusion to a default judgment obtained after a debtor actively participated in the underlying litigation for two years); *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir. 1983) (applying issue preclusion to a default judgment obtained after debtor actively participated in litigation for sixteen months).

The "actual litigation" requirement is satisfied here for the same reason. BTL did not simply decide that the litigation before the District Court "d[id] not justify the expense and vexation of putting up a fight" and decline to participate in the litigation at all. *See Gottheiner*, 703 F.2d at 1140.  Instead, BTL actively participated in the District Court litigation for over a year, from the filing of its Answer on May 15, 2018 to the entry of default by the Clerk of the District Court on June 11, 2019.[42] During that time, BTL engaged in written discovery with

---

[42] ECF No. 21, ¶¶ 7–12.

Everlog, disclosed expert and percipient witnesses, actively defending itself in the action through the close of discovery and the pretrial motions deadline set by the District Court.[43] Indeed, all that remained at the time Everlog moved for entry of BTL's default were two final pretrial conferences and the trial itself. It was not until BTL's counsel withdrew and it failed to comply with the District Court's directive to obtain new counsel that BTL's default was entered.[44]

The record in this case establishes that BTL actively participated in the District Court litigation but abandoned its efforts when it was unable to obtain new counsel.[45] Accordingly, the legal issues associated with Everlog's false advertising and false designation of origin claims, which are identical to those to be resolved in this adversary proceeding, were actually litigated before the District Court. The second prong of the issue preclusion analysis is satisfied.

### C. "Critical and Necessary."

Finally, for issue preclusion to apply, Everlog must also establish that the District Court's finding of "willfulness" was critical and necessary to the Judgment it awarded. In awarding Everlog $179,116 in disgorged profits, the District Court noted that such an award is "only proper if the defendant's violation was willful."[46] Simply put, the District Court could not have awarded Everlog disgorged profits without first finding BTL's false advertising was willful. Therefore, the "critical and necessary" element is satisfied.

---

[43] *Id.* at ¶ 7; ECF No. 16-8 at 2.
[44] ECF No. 16-8 at 2. Although difficult to discern the record presented to this Court it appears BTL was relying on experienced patent counsel for advice and as the trial date approached, counsel withdrew leaving BTL with few options.  The record does not disclose why counsel withdrew.
[45] Absent counsel BTL could not proceed.  *Reading Intern., Inc. v. Malulani Group, Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016) ("A corporation must be represented by counsel.").
[46] ECF No. 32-8 at 11 (citing *Fifty-Six Hope Road Music*, 778 F.3d at 1073).

14

Having concluded that issue preclusion applies, this Court determines that Everlog is entitled to summary judgment on Count One of its Complaint. The findings and conclusions reflected in the District Court's District Court Order establish that the $179,116 in disgorged profits awarded by the District Court arose from a willful and malicious injury committed by BTL. Accordingly, that portion of Everlog's claim is nondischargeable pursuant to § 523(a)(6).

### IV.   Everlog is entitled to partial summary judgment on Count Two of the Complaint.

Generally, Count Two of the Complaint asserts that BTL continues to manufacture six products that infringe the '598 Patent[47] in violation of the Injunction.[48] As stated above, both Everlog and BTL contend they are entitled to summary judgment on Count Two. Accordingly, the Court must weigh the merits of each motion independent of one another and determine whether judgment as a matter of law pursuant to Civil Rule 56 is appropriate. *Fair Housing Council of Riverside County, Inc.,* 249 F.3d 1132, 1136.

### A.  Contentions of the parties.

Generally, BTL contends that it is entitled to summary judgment on Count Two because it began selling the modified products illustrated on Exhibit 51 in April of 2019–after Everlog filed its District Court Complaint, but before the District Court entered its Judgment or Injunction.[49] Those products, according to BTL, incorporate a foam insulated core and a cementitious backing that were not included in the description of BTL's products Everlog placed

---

[47] The six products are identified in the Complaint as: (1) Board and Batten 12" (BB12); (2) Half-Round 12" Log Siding (HR12); (3) Hand-Hewn 12" Log Siding (HH12WF and HH12NF); and (4) Shiplap 12" and 8" (SL12 and SL8).
[48] ECF No. 1 at 8-9.
[49] ECF No. 17-1 at 5.

in its District Court Complaint. The products Everlog referenced in the District Court Complaint were specifically described as having:

> "an inner portion that is generally concave, in that it forms a channel or trough between the siding product and the building or other surface on which it is mounted. In some applications, the channel is filled with an insulation or structural support, or both."[50]

Notwithstanding the modifications in their designs, the names of BTL's modified products on Exhibit 51 remain identical to those referenced in Everlog's District Court Complaint. Nevertheless, BTL asserts that since the District Court Complaint failed to identify its modified products as infringing upon the 598 Patent, neither the Judgment nor the Injunction entered by the District Court encompassed them pursuant to Civil Rule 54.[51]

Everlog, both in its own Motion and in its Response to BTL's Motion, contends that BTL's modified products were part of the District Court litigation and, as a result, within the scope of the District Court's Judgment and Injunction.[52] In support of its contention, Everlog relies on the engineering drawings comprising Exhibit 51, which were submitted as an exhibit at the default judgment hearing before the District Court.[53] Exhibit 51 depicts BTL's modified products and specifically references a rigid foam core and concrete backing.[54] Since the District Court received and ostensibly considered Exhibit 51 prior to awarding default judgment in favor of Everlog and issuing its Injunction, Everlog contends that BTL's continuous manufacture and sale of the products depicted in Exhibit 51 violates the District Court's Injunction.

As an alternative argument, Everlog contends that even if BTL's modified products were not considered by the District Court, they still violate the District Court's Injunction and infringe

---

[50] ECF No. 32-14 at 5.
[51] ECF No. 17 at 10.
[52] ECF No. 23 at 2.
[53] ECF No. 20 at 18.
[54] *Id.*

16

upon the 598 Patent. Put differently, Everlog asserts that the simple addition of a concrete

backing and foam core does not avoid infringement as a matter of patent law.[55] Everlog contends

that under either argument, the undisputed facts establish that BTL's infringement of the 598

patent is willful and malicious under § 523(a)(6). As a result, Everlog contends that it is entitled

to damages in the amount of $238,902.50, the entirety of which it alleges is nondischargeable.[56]

In calculating its purported damages, Everlog utilizes the calculation adopted in the District

Court Order, but concedes that it has not received updated sales information from BTL.[57]

### B. The District Court did not explicitly conclude the products identified on Exhibit 51 infringed upon the 598 Patent but concluded BTL could not manufacture a simulated log siding product without infringing.

Civil Rule 54(c) provides that "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings." The Bankruptcy Appellate Panel for the

Ninth Circuit has expounded upon the text of Civil Rule 54(c) as follows:

> A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings. "Unless all parties in interest are in court and have voluntarily litigated some issues made beyond the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded." *Sylvan Beach, Inc. v. Koch*, 140 F.2d 852, 861 (8th Cir. 1944). The relief must be based on what is alleged in the pleadings and justified by plaintiff's proof, which the opposing party has had the right to challenge. "[Civil Rule] 54(c) creates no right to relief premised on issues not presented to, and litigated before, the trier." *Dopp v. HTP Corp.*, 947 F.2d 506, 518 (1st Cir. 1991).

*Delaney-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 370-71 (9th Cir. BAP 2003).

Before the District Court, Everlog's Complaint alleged that BTL manufactured and sold

six "Infringing Products," each of which was described as:

>  generally…elongated concrete 'logs' that have a generally C-shaped cross-section with an exterior portion that is generally convex and is patterned to look like a real wooden log

---

[55] ECF No. 23 at 19.

[56] *Id.* at 19.

[57] *Id.* at 20.

and an inner portion that is generally concave, in that it forms a channel or trough between the siding product and the building or other surface on which it is mounted. In some applications, the channel is filled with an insulation or a structural support, or both.[58]

Everlog's District Court Complaint made no mention of the products illustrated in Exhibit 51. It did not, for example, describe the "Infringing Products" as having a concrete backing like those on Exhibit 51.[59] The fact that Exhibit 51 was submitted as an exhibit at the default judgment hearing did not allow Everlog to avoid the effect of Civil Rule 54. Whether Exhibit 51 became "part of" the District Court litigation based on Everlog's submission of the drawings at the hearing, as Everlog contends, is irrelevant. Nothing in the record suggests the District Court awarded relief beyond that available under Civil Rule 54. Civil Rule 54, as explained, focuses on the claims and relief set forth in the moving party's complaint, as well as those beyond the face of the pleading that are "voluntarily litigated." *See Delaney-Morin*, 304 B.R. at 370-71. The products identified in Exhibit 51 did not fall in either category during the District Court litigation.

Simply put, Everlog's District Court Complaint alleged that six BTL products violated the 598 Patent. Those products differed from the ones illustrated on Exhibit 51. As a result, the District Court did not explicitly determine whether the products identified on Exhibit 51 infringed upon the 598 Patent. Instead, it simply determined that the BTL products described in Everlog's District Court Complaint violated the 598 Patent. It awarded damages based on that infringement, as reflected in the Judgment.

Although the products illustrated on Exhibit 51 were not subject to the District Court's Judgment, the District Court explicitly found that BTL could not produce a simulated log siding

---

[58] ECF No. 32-14 at 5.
[59] *See* ECF No. 16-13 at 88-97.

product without infringing upon the 598 Patent. In connection with this conclusion, it issued the Injunction. Civil Rule 54 has no effect on the Injunction. As explained below, the modifications to BTL's infringing products reflected in Exhibit 51 continue to violate the Injunction and Everlog is entitled to judgment in an amount to be proven at trial that will be excepted from BTL's discharge under § 523(a)(6).

### C. The products identified on Exhibit 51 violate the Injunction and infringe upon the 598 Patent.

As stated, the District Court entered the Injunction forbidding BTL from "making, using, advertising, or selling products that infringe [the 598 Patent]..."[60] In determining that entry of the Injunction was appropriate, the District Court concluded that "there is no way for [BTL] to produce simulated log siding that does not infringe" upon the 598 Patent.[61] Accordingly, the District Court elected to permanently enjoin BTL from selling or producing infringing products to avoid repetitive and unnecessary litigation between the parties that would inevitably result absent an injunction.[62] In essence, the District Court put BTL out of business by prohibiting it from manufacturing simulated log siding products.

The parties do not dispute that Jonathan Perry, the President of BTL, was served with copies of the District Court Order, associated judgment, and the Injunction on July 25, 2019, by the Sheriff of Granite County, Montana.[63] There is similarly no dispute that BTL elected not to appeal the District Court's Judgment or Injunction.[64] Finally, there can be no dispute that the underlying purpose of the District Court's Injunction was to prohibit BTL from making,

---

[60] ECF No. 32-9.
[61] ECF No. 32-8 at 10.
[62] *Id.*
[63] ECF No. 21 at 6.
[64] *Id.*

marketing, or selling products that infringe upon the 598 Patent.[65] All that remains for this Court

to determine is: (1) whether the products BTL currently manufactures and sells, as illustrated by

the drawings comprising Exhibit 51, violate the 598 Patent and, by extension, the Injunction; and

(2) if so, whether the infringement amounts to willful and malicious injury under § 523(a)(6). It

will address each in turn.

Generally, BTL contends that the addition of concrete backing to its products shown on

Exhibit 51 makes its newer products "distinct from the product design Everlog contested" before

the District Court.[66] Everlog, on the other hand, asserts that "the addition of cementitious

backing" to BTL's otherwise infringing designs "does not avoid infringement."[67] Although the

District Court did not specifically reference Exhibit 51 in its District Court Order, it sent a clear

message for BTL to consider going forward: "there is no way for Better Than Logs to produce a

simulated log siding that does not infringe."[68]  The District Court entered its Injunction to avoid

the necessity of repeated patent infringement suits between the parties.[69] Despite the District

Court's clear directive, BTL has continued to manufacture simulated log siding products, in

violation of the Injunction.[70]  Litigating in this Court whether the products violate the 598 patent

---

[65] *See* ECF No. 16-9.

[66] ECF No. 17-1 at 10.

[67] ECF No. 23 at 14.

[68] ECF No. 32-8 at 10.

[69] *Id.* ("Absent an injunction, Everlog would have to initiate a new patent infringement suit if Better than Logs continues to produce infringing products, further demonstrating the inadequacy of money damages.").

[70] The District Court's Order references four other competitors who manufacture similar products to those produced by Everlog and protected by the 598 Patent. However, the District Court's Order similarly notes that Everlog is investigating the extent to which those competitors similarly infringe upon the 598 Patent. Ultimately, the existence of other competitors and the extent to which their products infringe upon the 598 Patent is not at issue in this case and does not detract from the import of the District Court's conclusions. This Court is tasked with determining whether BTL's products identified on Exhibit 51 infringe and determine they do.

would result in the very harm to Everlog the Injunction was intended to prevent, (serial patent infringement suits, or litigation to determine whether a "new" product violated the patent).

Even setting aside the District Court's findings and conclusions, BTL's contention that simply adding a cementitious backing and foam core to its otherwise infringing product avoids infringement finds no support in the law. In support of their competing contentions, both parties rely on *SunTiger, Inc. v. Sci. Research Funding Grp.*, 189 F.3d 1327, 1336 (Fed. Cir. 1999). In *SunTiger,* the Plaintiff held a patent encompassing a sunglass lens into which an orange-color, sharp cut-on dye was incorporated. *Id.* at 1329. The lenses, once treated with the orange dye, were shown to effectively block out potentially harmful blue light from the wearer's eyes while allowing other colors of light to be transmitted. *Id.* The defendant, BlueBlocker, also utilized a lens that incorporated an orange-color, sharp cut-on dye. *Id.* at 1331. In addition to the orange dye, however, BlueBlocker incorporated a gray surface coating onto its accused lenses. *Id.* The district court awarded summary judgment in favor of BlueBlocker after determining that the gray coating applied to its lenses materially changed the light transmission quality of the lenses, such that it fell outside the scope of SunTiger's patent. *Id.* at 1332.

On appeal, the Federal Circuit noted that, notwithstanding BlueBlocker's addition of the gray coating to its lenses, a portion of its lenses allowed for transmission of light in a manner that violated SunTiger's patent. *Id.* at 1337. As such, it reversed the district court's award of summary judgment in favor of BlueBlocker. *Id.* In reaching its decision, the Federal Circuit noted that:

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil rights.

21

*Id.* at 1336 (quoting *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991)). Adopting any other reasoning, the court held, "would allow an infringer to avoid infringement merely by adding additional elements to an infringing device." *Id.*

The Federal Circuit went on to distinguish its decision from the reasoning set forth in *Instituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996), which is similarly relied on by BTL in support of its contention that the addition of a foam core and concrete backing avoids infringement in this case. In *Instituform*, the court held that in certain instances, "adding elements may…prevent a finding of literal infringement where…the claim is specific as to the number of elements…and adding elements eliminates an inherent feature…of the claim." 99 F.3d at 1106.

Here, as explained above, District Court Order concluded that BTL could not manufacture a simulated log siding product without infringing upon the 598 Patent and issued its Injunction accordingly. It is undisputed that, since entry of the District Court Order and Injunction, BTL continues to manufacture, market, and sell simulated log siding products illustrated on Exhibit 51.[71]

BTL's continuous sale of the products illustrated on Exhibit 51 disregards the District Court's conclusion that it cannot manufacture or sell simulated log siding products without infringing upon the 598 Patent and violating the Injunction. Furthermore, the differences between the products on Exhibit 51 and those described in Everlog's District Court Complaint are inconsequential. First, BTL's addition of a foam core to its infringing products does not avoid infringement, as claim 6[72] of the 598 Patent expressly contemplates the inclusion of a foam

---

[71] *See* ECF No. 21-2 at 27-29.
[72] The "claims" included in a patent "provid[e] the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected

core.[73] Second, the addition of a concrete backing to BTL's infringing products does not avoid infringement under *SunTiger*.[74] 189 F.3d at 1336. Further, BTL's addition of a cementitious backing similarly does not eliminate any "inherent" feature of the 598 Patent's claims and does not avoid infringement under *Instituform*. 99 F.3d at 1106.[75]

The undisputed facts in this case establish that BTL's modified products are being manufactured in violation of the Injunction, because the District Court Order found "there is no way for BTL to produce a simulated log siding that does not infringe." This Court is constrained by the broad language in the District Court Order. Further, this Court's consideration of the District Court's language in conjunction with applicable patent law leads it to conclude that the products identified on Exhibit 51 infringe upon the 598 Patent. Any contrary conclusion would be inconsistent with the District Court's findings and conclusions.

**D. BTL's infringement was willful and malicious under § 523(a)(6).**

Having reasoned that the District Court Order requires this Court to conclude the products on Exhibit 51 infringe, this Court must determine whether BTL's infringement was "willful and malicious" under § 523(a)(6) and, if so, whether Everlog is entitled to an award of damages to be excepted from BTL's discharge.

Neither party disputes that patent infringement may fall within the scope of § 523(a)(6). This is unsurprising in light of the Supreme Court's discussion of the statute in *Geiger*, where it

---

invention." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (citing *Grover Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 607 (1950)).
[73] *See* ECF No. 16-28 at 27.
[74] *Id.*
[75] Even if BTL were able to avoid a finding of literal infringement, Everlog would be entitled to judgment as a matter of law under the "doctrine of equivalents," which permits a finding of infringement if there is "proof of insubstantial differences between the claimed and the accused products.." *Hilton Davis Chemical Co., v. Warner-Jenkinson Co., Inc.*, 62 F.3d 1512, 1521-22 (Fed. Cir. 1995).

stated that § 523(a)(6)'s formulation "triggers in the lawyer's mind the category 'intentional torts,' which generally require that the actor intend the *consequences* of an act, not simply the act itself." 523 U.S. at 61 (emphasis in original). Given the Supreme Court's analogy between intentional torts and § 523(a)(6)'s "willful and malicious" standard, circuit courts have determined that patent infringement, historically viewed as an intentional tort, falls within the exception to discharge provided by § 523(a)(6). *See, e.g., In re Trantham*, 304 B.R. 298, 307 (6th Cir. 2004) (discussing patent infringement as a form of intentional tort that falls within the scope of § 523(a)(6) under *Geiger*).

As stated above, the "willfulness" prong of § 523(a)(6) requires a Plaintiff to establish that a debtor not only committed a wrongful act but did so "with knowledge that the act is wrongful and will necessarily cause injury." *Jerich*, 238 F.3d at 1208. In this case, BTL does not dispute that it was served with the District Court Order, Judgment, and Injunction.[76] Therefore, BTL had either actual or constructive knowledge of the District Court's conclusion that "there is no way for [BTL] to product a simulated log siding that does not infringe."[77] BTL similarly had knowledge of the District Court's award of money damages to Everlog based on its past infringement and its entry of the Injunction to avoid future infringement. Indeed, the District Court expressly recognized that granting the Injunction was only appropriate because Everlog suffered, and would continue to suffer, irreparable harm absent the Injunction. As the District Court noted, the Injunction was intended to prevent the continued "violation of any right secured by patent."[78]

---

[76] ECF No. 21 at 22.
[77] ECF No. 32-8 at 10.
[78] *Id.* at 9.

Despite having received the District Court Order, its Judgment, and its Injunction BTL disregarded each and elected to continue to manufacturing simulated log siding products that share the same elements as those considered by the District Court, with the addition of a cement backing. This addition does not, as a matter of law, avoid infringement under applicable patent law. These facts establish that BTL knew that its continued infringement of the 598 Patent was wrongful and that it would necessarily cause injury. Thus, BTL's continued infringement of the 598 Patent in direct violation of the District Court's Injunction was "willful" under § 523(a)(6).

To determine if BTL's infringement is malicious, this Court must find that it is: 1) a wrongful act; 2) done intentionally; 3) which necessarily causes injury; and, 4) is done without just cause or excuse. *In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008). Since BTL's willfulness has been established, malice may be inferred. *Ormsby*, 591 F.3d at 1207.

First, as explained above, BTL's continuous sale of simulated log siding products is wrongful, as it directly violates the District Court Order and Injunction. Second, BTL has also acted intentionally in doing so, as the record establishes that BTL is currently manufacturing and selling the same products illustrated on Exhibit 51.[79] Third, BTL's continuous infringement has necessarily caused injury to Everlog. Indeed, the District Court determined that BTL's sale of infringing products deprived Everlog of profits it could have captured but-for BTL's infringement. Neither party has offered any evidence suggesting that the same is no longer true with respect to BTL's continued infringement. Finally, BTL has failed to offer any just cause or excuse for its actions.[80] Accordingly, BTL's continued infringement of the 598 Patent is malicious under § 523(a)(6).

---

[79] ECF No. 21 at 28.

[80] Although not described as a "just cause or excuse" in its briefing, BTL's argument that the addition of a cementitious backing to its products avoids infringement could be construed as

25

The final issue for this Court to determine is Everlog's damages attributable to BTL's continued infringement. Everlog asserts that it is entitled to damages totaling $238,902.50. In calculating its alleged damages, Everlog relies on the calculation utilized in the District Court Order. There, the District Court determined Everlog would have captured 75% of BTL's sales, but-for BTL's infringement, and awarded Everlog lost profit damages by taking 75% of BTL's estimated sales and multiplying the figure by Everlog's profit margin of approximately 45%.[81]

In this adversary proceeding, adopting the District Court's formula is problematic for at least two reasons. First, the District Court's formula was based, at least in part, on its finding that at least two other companies besides BTL and Everlog produce and sell simulated log siding products. In this adversary proceeding, neither party has stated whether the two other companies continue to operate as Everlog's competitors. Second, the District Court's formula relies on data from 2019 that may or may not differ from 2021 data. It accounted for Everlog's manufacturing capacity and profit margin as they existed in 2019 and similarly incorporated BTL's estimated gross profits in 2019. There is no evidence in the record establishing whether this data remains accurate, and Everlog concedes that it has not received updated information related to BTL's gross sales.[82] Accordingly, Everlog has failed to establish that it is entitled to $238,902.50 in damages based on BTL's continued infringement as a matter of law.

In conclusion, Everlog has established that it is entitled to summary judgment with respect to Count One. With respect to Count Two, Everlog has established that BTL continues to infringe upon the 598 Patent and that its infringement is willful and malicious under § 523(a)(6).

---

such. Regardless, this excuse conflicts with fundamental patent law concepts, as discussed in *SunTiger*, and is not "just" for that reason.
[81] ECF No. 32-8 at 8.
[82] ECF No. 20 at 20.

It is entitled to summary judgment on Count Two, but only in part.  Genuine issues of fact related to the calculation of damages and the amount of the debt to be excepted from discharge on Count Two remain and preclude summary judgment on Count Two in its entirety. To resolve the outstanding issues, a limited trial must be conducted on the issue of Everlog's damages.

## CONCLUSION

For the reasons stated above, the Court will enter a separate Order granting in part and denying in part Everlog's Motion and denying BTL's Motion.

Dated June 11, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana